# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9337 | **DATE** | 6/15/2004 |
| **CASE TITLE** | Lan Chi Rohall vs. General Security Services, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted in part and denied in part. It is granted as to counts IV, V and VI and denied as to Counts I and VII.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 16 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | 2004 JUN 15 AM 9:05 U.S. DISTRICT COURT CLERK | date mailed notice mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAN CHI ROHALL,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL SECURITY SERVICES CORPORATION, a Minnesota Corporation, and ANTHONY FERRANTINO and ERNESTO CORTINA,<br><br>Defendants. | Case No.: 03 C 9337<br><br>Judge Amy St. Eve |



## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Lan Chi Rohall has filed a seven-count Complaint against the General Security Services Corporation ("GSSC"), Anthony Ferrantino, and Ernesto Cortina. Count I alleges that Defendants engaged in retaliation in violation of Title VII of the Civil Rights Act of 1964 ("the Act"). Count II alleges that Defendants engaged in racial discrimination in violation of the Act. Count III alleges that Defendants engaged in sex discrimination in violation of the Act. Count IV alleges that Defendants breached the implied covenant of good faith and fair dealing. The remaining three counts allege wrongful discharge, intentional infliction of emotional distress ("IIED"), and battery. Defendants seek to dismiss Counts I and IV of the Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and Counts V, VI, and VII for lack of federal subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). For the reasons set forth below, Defendants' motion is granted in part and denied in part.



1

## BACKGROUND

Plaintiff Lan Chi Rohall is a Vietnamese-American woman who was an employee of GSSC. (R. 1-1, Compl., ¶¶ 16, 17, 48.) GSSC is a corporation organized and existing under the laws of the State of Minnesota, and maintains a place of business at 28 East Jackson Street in Chicago, Illinois. (*Id.*, ¶ 5.) GSSC employed Rohall as a security guard from December 15, 2001 to May 20, 2003. (*Id.*, ¶ 8.) Ferrantino, a resident of Illinois, worked as a security guard with Rohall during her assignment at 10 West Jackson. (*Id.*, ¶¶ 6, 12.) Cortina is also a resident of Illinois. (*Id.* ¶ 7.)

Rohall alleges that on or about the early morning of March 2, 2003, Ferrantino made derogatory comments regarding Rohall's gender and national origin after she failed to remember a security access code at a hallway door. (*Id.*, ¶¶ 15, 16.) During the course of this altercation, Rohall claims she became concerned about her personal safety. (*Id.*, ¶ 20.) Accordingly, she called Carey, the supervisor on duty at the facility. (*Id.*) Because Carey could not come immediately, Rohall allegedly called the FPO Control Office[1], but that office did not have anyone on duty. (*Id.*, ¶ 21, 22.) Rohall alleges that Carey arrived approximately 45 minutes later, and chastised Rohall for involving outsiders in the dispute. (*Id.*, ¶ 23, 24.) Rohall contends that Ferrantino continued to make derogatory comments toward Rohall for hours after Carey left. (*Id.*, ¶. 27.) During this time, Ferrantino swung his baton and injured Rohall's elbow. (*Id.* ¶ 35.) Later that day, Rohall filed a complaint with GSSC, recounting the incident. (*Id.*, Ex. C.)

On March 6, 2003, Rohall demanded a meeting with GSSC and her union president to discuss the March 2, 2003 incident. (*Id.*, Ex. D.) Rohall alleges that during the meeting on March 14, 2003, Cortina threatened her and told her that GSSC would terminate her if she

---

[1] The parties do not indicate what the acronym "FPO" means.

continued to complain. (*Id.*, ¶ 33.) In addition to the threat, Rohall also alleges that Ferrantino and other GSSC employees pressured her to qualify on the firearms range ahead of her scheduled time in retaliation for her complaints. (*Id.* ¶¶ 36, 43(b).)

On or about May 20, 2003, Rohall alleges that GSSC ordered her to take the qualification test on the firearms range. (*Id.*, ¶ 37.) She claims that GSSC scheduled the test before her required time, and that GSSC had not given her the required 48 hours notice. (*Id.*, ¶ 37.) She alleges that she failed the test due to her elbow injury and a lack of preparation. (*Id.*, ¶ 38.) GSSC terminated Rohall because she did not qualify on the firearms range. (*Id.*)

Rohall claims that GSSC retaliated against her when Cortina made his threats and when GSSC forced her to take the firearms qualification examination under adverse circumstances. (*Id.*, ¶ 43.) Rohall claims that her termination amounts to national origin discrimination under Title VII because GSSC allowed American-born employees who failed the firearms test to retake the exam. (*Id.*, ¶ 51.) Additionally, she alleges that GSSC harassed her and ignored her complaints because of her national origin in violation of Title VII. (*Id.*, ¶¶ 52, 53.)

Rohall next claims that GSSC discriminated against her on basis of sex because GSSC retained a male employee who repeatedly failed the same test. (*Id.*, ¶ 59.) Further, Rohall alleges that GSSC violated the implied duty of good faith and fair dealing by terminating her. (*Id.*, ¶¶ 67, 68.) She also contends that GSSC wrongfully discharged her when GSSC terminated her under discriminatory conditions. (*Id.*, ¶ 74.) Rohall also claims that GSSC intentionally inflicted emotional distress in performing the actions that led to her dismissal. (*Id.*, ¶ 77.) Lastly, Rohall claims that when Ferrantino caused his baton to forcefully strike Rohall's elbow, he committed a battery on her. (*Id.*, ¶ 80.)

On or about April 11, 2003, Rohall filed a sex and national origin discrimination charge against GSSC with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*, Ex. A.) In the charge, Rohall checked the "cause of discrimination" boxes for "sex," "national origin," and "retaliation." (*Id.*) On or about September 27, 2003, the EEOC issued Plaintiff a right to sue letter for Title VII. (*Id.*, Ex. B.) On December 24, 2003, Plaintiff filed her complaint in this case. (R. 1-1. Compl.) Defendants now seek to dismiss the Counts I, IV, V, VI and VII of Plaintiff's complaint.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the sufficiency of a complaint. It is not designed to resolve the case on the merits[2]. *Petri v. Gatlin*, 997 F. Supp. 956, 963 (N.D. Ill. 1997) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §1356, at 294 (2d ed. 1990)). When determining whether to grant a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). A court must also draw all reasonable inferences in the plaintiff's favor. *Id.* A complaint should be dismissed under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984). A plaintiff cannot satisfy federal pleading requirements, however, merely by attaching bare legal conclusions to narrated facts, which fail to outline the basis of their claims. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

---

[2] Defendants move to dismiss the last three counts of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiff failed to exhaust her administrative remedies. (R. 10-1, Def.'s Mem. Supp. Mot. Dismiss at 7-8.) Because failure to exhaust administrative remedies is not a jurisdictional issue, *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000), the Court will analyze this motion under Rule 12(b)(6) rather than Rule 12(b)(1). *Boutte v. Principi*, No. 02 C 1916, 2003 WL 262425, *1 (N.D. Ill. Jan. 27, 2003).

## ANALYSIS

### I. Count I States a Claim for Retaliation under Title VII

It is "unlawful employment practice for an employer to discriminate against an employee because [she] has opposed any practice made an unlawful employment practice" by Title VII. (42 U.S.C. § 2000e-3(a).) To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) that she engaged in statutorily protected expression, (2) that she suffered an adverse action by her employer, and (3) that there was a causal link between the protected expression and the adverse action. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir. 1998). Defendants seek to dismiss Plaintiff's retaliation claim on the ground that she has failed to allege an adverse action by GSSC.

First, Rohall contends that GSSC's threat of firing her is an actionable adverse action. (R. 14-1, Pl.'s Mem. Opp. Defs.' Mot. Dismiss at 5.) A threat alone, however, is not enough to create a claim for retaliation. *Jenkins-Allen v. Powell Duffryn Terminals*, 18 F. Supp. 2d 885, 893 (D. Ill., 1998). Therefore, based on the allegations in the complaint, threatened termination does not give rise to a retaliation claim.[3]

Second, Rohall contends that when GSSC forced her to take the firearms qualification test prematurely, it committed an adverse action. The Seventh Circuit has stated "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). An adverse employment action is "a change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.

---

[3] In the response to the motion to dismiss, Plaintiff argues that the threat violated Rohall's First Amendment rights. (R. 14-1, Pl.'s Mem. Opp. Defs.' Mot. Dismiss at 5-6.) Plaintiff, however, does not allege any such violation in the complaint, nor does Plaintiff provide the necessary basis for finding a violation of the First Amendment. Therefore, the Court rejects this argument.

5

1993). A court must consider the particular facts of each case to determine whether employees have suffered a materially adverse employment action. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001).

The terms of Plaintiff's employment required her to take a firearms qualification test every six months. (*Id.*) Additionally, the terms stated that GSSC should give an employee 48 hours notice before the test. (*Id.*, ¶ 37.) Plaintiff alleges that GSSC pressured her into taking the firearms qualification exam before her scheduled time and without the requisite notice. (*Id.*, ¶ 36.) She claims that she failed the exam because she did not have sufficient time to prepare for it.

Defendants claim that removing the 48-hour notice period and forcing Plaintiff to take the qualification ahead of schedule is nothing more than an inconvenience. (R. 10-1, Def's Mem. Supp. Mot. Dismiss at 6.) Defendants' reliance on *Twisdale v. Snow*, 325 F.3d 950 (7th Cir. 2003) and *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997 (7th Cir. 2000) to support their argument is misplaced.[4]

In *Twisdale* the court held that harassment did not alter the terms or conditions of employment. *Twinsdale*, 325 F. 3d at 953. The court found that any alleged harassment through fewer duties could not have impeded plaintiff's career as the defendant employer had recently promoted the plaintiff. *Id.* Here, Plaintiff alleges that the requirement that she take an unscheduled firearms proficiency exam without proper notice altered a term of her employment. GSSC's demand that Plaintiff take the firearms proficiency test is distinct from the harassment experienced by the plaintiff in *Twisdale*.

---

[4] Both of these cases dealt with summary judgment motions, and therefore the courts in those cases based the opinions on the entire record. Here, the Court must look only at the allegations in Plaintiff's complaint.

6

Similarly, in *Stockett*, the court found that the administration of a drug test did not contravene the plaintiff's terms of employment and fell within the defendant's posted drug testing policy. *Stockett*, 221 F.3d at 1002. In contrast, Plaintiff alleges that the firearms proficiency test departed from her employment terms in at least two ways – GSSC scheduled it outside of the six-month testing cycle and the schedule did not include the required notice period.

Plaintiff's allegations are sufficient to allege an adverse employment action. Accordingly, the Court denies the motion to dismiss Count I for failure to state a claim.

## II. The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Fails

Under Illinois law, the covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). A lack of good faith does not by itself create a cause of action. *Id.* Rather, the covenant guides the construction of explicit terms in an agreement. *Id.* Rohall does not suggest that the covenant of good faith guides interpretation of a particular contract term. Instead, in the complaint, the implied covenant serves as a basis for a separate count. (R. 1-1, Compl. ¶ 39-44.) In her response to the dismissal motion, Rohall dropped this misguided theory and instead conceded that Count IV is subject to dismissal. (R. 14-1, Pl.'s Mem. Opp. Defs.' Mot. Dismiss at 2.) The Court grants the motion to dismiss Count IV.

## III. This Court Has Subject Matter Jurisdiction Over the Battery Count, but Lacks Subject Matter Jurisdiction Over the Wrongful Discharge and Intentional Infliction of Emotional Distress Counts

Defendants move to dismiss the final three claims as preempted by the Illinois Human Rights Act ("IHRA"). The IHRA states that "except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as

7

set forth in this Act." 775 ILCS § 5/8-111(C). A federal court lacks jurisdiction over a common law action if that action is in essence one, which seeks redress for a "civil rights violation" as defined by the IHRA. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 516 (Ill. 1997). *See Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 905 (7th Cir. 2002). The analysis is not based on whether the civil rights violation is factually related to the common law claim. *Id.* Instead, a court should look at whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself. *Id.* at 517. Plaintiff must exhaust all administrative remedies of the IHRA if she brings a state law claim for discrimination in addition to any claims under Title VII. If Counts V, VI, and VII are independent of Plaintiff's alleged civil rights violations, then Plaintiff did not have to exhaust her IHRA remedies. If the tort claims are "inextricably linked" to the civil rights violations, however, then Plaintiff must exhaustthe IHRA procedures.

### A. The IIED and Wrongful Discharge Claims

Civil rights violations serve as the sole bases of Rohall's wrongful discharge and IIED claims. (R. 1-1, ¶ 75, 77.) Specifically, the wrongful discharge claim states that "the above described actions [the civil rights violations of previous counts] of GSSC constitute a wrongful discharge." (*Id.*, ¶ 75.) Likewise, the IIED claim states that Defendants "in committing the above described actions [the civil rights violations of previous counts] intended and did inflict severe emotional distress." (*Id.*, ¶ 77.)

Plaintiff presents several cases in support of her argument that the IHRA does not preempt the IIED claim. None of those cases, however, is analogous to this situation.

In *Porter v. Int'l Profit Assocs.*, Nos. 01 C 4427, 02 C 2790, 2003 WL 22956004 (N.D. Ill., Dec. 11, 2003), for example, the court found that the IHRA did not preempt the plaintiff's

IIED claim because the defendants allegedly had severely harassed the plaintiff at work including offensively touching her private areas and calling her offensive names. *Id.* at *1. The court held that this behavior could support a claim for IIED without any of the civil rights violations. *Id.* Unlike the claims in *Porter*, Rohall's claims for wrongful discharge and IIED are based solely on the civil rights violations.

Similarly, in *Catalan v. Schiele Graphics*, No. 03 C 4934, 2004 WL 417201, at *1 (N.D. Ill. Jan. 29, 2004), the defendant employer also acted in a grossly sexually harassing manner, which included harassing personal contact and harassing dialogue. In *Newman v. Hansen & Hempel Co.*, No. 01 C 9871, 2002 WL 31455990, at *1 (N.D. Ill. Nov. 1, 2002), the plaintiff also complained of severe physical and verbal sexual harassment. In both *Catalan* and *Newman*, the court held that the IHRA did not preempt the IIED claims because the wrongful behavior was a violation of the common law tort duty to avoid emotional distress regardless of also falling under prohibitions of the IHRA. In contrast, Rohall's claims for wrongful discharge and IIED lack such an independent basis.

The Plaintiff does not contest that she failed to exhaust her IHRA remedies. Accordingly, the Court dismisses Counts V and VI for lack of federal subject matter jurisdiction under Federal Rules of Civil Procedure Rule 12(b)(1).

### B. The Battery Claim

In contrast, Rohall's battery claim is distinct from her claims for wrongful discharge and IIED in that it has a completely independent basis. The basis for the claim is the alleged intentional and forceful contact of Ferrantino's baton with Rohall's elbow. (R. 1-1, Compl., ¶ 80.) The alleged actions that led to the battery claim in this case are not merely a reiteration of Plaintiff's other claims of retaliation, gender and national origin discrimination. The civil rights

violations of the first three counts are incidental to the battery claim. Therefore, Defendants' motion to dismiss Count VII is denied.

## CONCLUSION

For the above reasons, the Court grants Defendants' motion to dismiss Count IV, V, and VI and denies the motion to dismiss Counts I and VII.

Dated: June 15, 2004                                ENTERED

*[signature]*
AMY J. ST. EVE
United States District Court Judge